Mark A. Ellingsen, ISB No. 4720
WITHERSPOON KELLEY
The Spokesman-Review Building
608 Northwest Boulevard, Suite 300
Coeur d'Alene, Idaho 83814
Telephone:     (208) 667-4000
Facsimile:     (208) 667-8470
Email:  mae@witherspoonkelley.com

*Attorneys for the Plaintiff Crescent Silver, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CRESCENT SILVER, LLC, a Delaware limited liability company, | CASE NO. |
| Plaintiff, | COMPLAINT |
| v. | |
| NEW JERSEY MINING COMPANY, an Idaho Corporation, | |
| Defendants. | |

Plaintiff Crescent Silver, LLC, by and through its attorneys, Witherspoon Kelley, for its

causes of action against the above-named Defendant alleges and states as follows:

**JURISDICTION, VENUE AND PARTIES**

1.      <u>Status of Plaintiff.</u>  Crescent Silver, LLC ("Crescent Silver") is a limited liability

company organized under the laws of the State of Delaware, but which operates a silver mine

commonly known as the Crescent Mine which is located in Shoshone County, Idaho. The members

COMPLAINT - 1
K:\wdocs\cdamain\16080\0001\C0117636.DOC

of Crescent Silver are HUSC Sub, LLC and HUSC II, LLC, both Delaware limited liability companies. None of the parent corporations and individuals that comprise the ownership of both HUSC Sub, LLC and HUSC II, LLC, reside in the state of Idaho.

    2.    <u>Status of Defendant New Jersey Mining Company</u>.  Plaintiff alleges that at all times material, Defendant New Jersey Mining Company ("NJMC") has been a corporation organized under the laws of the State of Idaho and whose principal place of business is located in Shoshone County, Idaho.

    3.    <u>Jurisdiction and Venue</u>.  This court has jurisdiction pursuant to 28 U.S.C. § 1332 due to the diversity of the citizenship of the parties.  The amount in controversy, exclusive of interest and costs, exceeds $75,000.  Venue is proper in this court pursuant to 28 U.S.C. §1391(a) because the acts which give rise to this action took place in this judicial district and defendant's principal place of business is within this judicial district.

## OPERATIVE FACTS

    4.    NJMC was originally the sole owner of the New Jersey Mill (the "Mill"), a mineral processing facility in Kellogg, Idaho.

    5.    United Mine Services, Inc. ("UMS") was the original owner of the Crescent Mine, and for purposes of the joint venture referenced herein, was the predecessor in interest to Crescent.

    6.    Following negotiations between NJMC and UMS, the two entered into the New Jersey Mill Venture Agreement dated January 7, 2011 (the "JV Agreement") with respect to the ownership and operation of the Mill and formed the New Jersey Mill Joint Venture ("NJMJV").

A true and correct copy of the JV Agreement is attached hereto as Exhibit A and incorporated by reference herein.

7.      The JV Agreement, pursuant to Section 8, appoints NJMC as the initial Manager. Crescent is informed and therefore alleges that NJMC has remained as the Manager under the JV Agreement up until it was deemed to have resigned as referenced below.

8.      The JV Agreement, pursuant to sections 3.3 and 3.4, strictly limits the purposes of NJMJV to the following:  (i) to conduct Mineral Processing operations within the Properties for the benefit of the Participants; (ii) to acquire additional real property and other interests within the Area of Interest only for mineral processing purposes; (iii) to evaluate and engage in expanded Mineral Processing Operations on the Properties; (iv) to complete and satisfy all Environmental Compliance obligations and other Continuing Obligations relating to the Properties; and (v) to perform any other operation or activity necessary, appropriate, or incidental to any of the foregoing.

9.      Pursuant to Sections 9.1, 9.2 and 9.3 the Manager is required to submit a proposed Program and Budget to the Participants no later than 30 days prior to the Annual Meeting. Further, the Manager may only conduct Operations, incur expenses and acquire Assets pursuant to an approved Program and Budget.  Pursuant to Section 7.3 of the Agreement, the Manager is to give notice of "regular meetings," which must be held "at least annually."

10.     Pursuant to section 5.3, "[t]he Participants shall contribute funds for adopted Programs and Budgets in proportion to their respective Participating Interests . . . ."  Pursuant to section 6.1.1 the initial Participating Interests are 67% for NJMC and 33% for Crescent. Crescent is informed and therefore alleges that the Participating Interests remain unchanged.

COMPLAINT - 3

11.     Pursuant to section 15.15 of the JV Agreement, "[n]o custom milling or processing shall be done for an unrelated third party without the approval of both parties." In accordance with this section 15.15, NJMJV had performed custom milling for an unrelated third party prior to Crescent succeeding to UMS's rights under the JV Agreement, and the profit from such custom milling was split by the Participants in accordance with their Participating Interests.

## Crescent Silver Succeeds to the Rights of UMS in the JV Agreement

12.     In the summer and fall of 2013, UMS and its affiliated entities defaulted on secured obligations owed to its lender, Crescent Silver LLC f/k/a HUSC, LLC.  UMS's parent company, United Silver Corporation, was eventually adjudicated insolvent and placed into a receivership in the Ontario Superior Court of Justice (Court File No. CV-14-00010390-00CL). While the receivership was pending, UMS and Crescent Silver entered into a consensual foreclosure agreement by which substantially all of UMS's assets were transferred to Crescent Silver in partial satisfaction of its debt (the "Consensual Foreclosure").

13.     As part of the Consensual Foreclosure, Crescent Silver approached NJMC to obtain its written consent to the assignment of UMS's rights and obligations under the JV Agreement to Crescent Silver.  Following negotiations, NJMC provided its written consent through a Consent, Waiver and Assumption of Venture Agreement (the "Consent Agreement").

14.     Following the Consensual Foreclosure, Crescent Silver installed new officers to manage the Crescent Mine.

## NJMC Improperly Invoices Crescent and Breaches the JV Agreement

15.     Following the succession of Crescent Silver to UMS's rights under the JV Agreement, Crescent Silver began receiving invoices from UMS that allocated holding expenses for the Mill during periods of inactivity as follows: 30% to NJMC and 70% to Crescent Silver.

16.     Crescent Silver had concerns about these invoices that violated the JV Agreement and requested clarification and backup information related to them.  UMS responded to these requests by threatening to dilute Crescent Silver's Participating Interest if prompt payment was not received.  UMS accordingly made payment to NJMC under protest, but continued in its efforts to seek information.

17.     During the course of its investigation into the propriety of the invoices, Crescent Silver learned that NJMJV did not have an approved Program and Budget as required under the JV Agreement.  Crescent Silver has made written demand that NJMC, as Manager of NJMJV, prepare and properly approve a Program and Budget.  Despite this request, no Program and Budget has been approved by NJMJV to date.

18.     In late Spring of 2014, NJMC made unilateral plans to make certain capital improvements to the Mill.  NJMC did not hold a meeting nor seek Crescent Silver's approval for these capital improvements.  Crescent Silver is informed and believes that NJMC made these capital improvements for the purpose of custom milling certain ore for an unrelated third party.

19.     On or about July 29, 2014, Roger Gross, the President of Crescent Silver, met with Grant Brackebusch and Del Steiner of NJMC to discuss the Mill and NJMC's failure to establish a Program and Budget.  While certain items were discussed at this informal meeting, no Program and Budget was approved. While at this meeting NJMC stated that it had not sought to

dilute Crescent's interest in NMJV related to the capital improvements done to the Mill, though at various times it has taken a contrary position.

20.     In November of 2014, Crescent Silver learned that NJMC had caused NJMJV to undertake obligations to perform custom milling of gold ore from the Golden Chest Mine (the "Golden Chest Ore") for Juniper Resources, an entity that NJMC does not own, is not owned by, and is not under common ownership with.

21.     As a result of NJMC's numerous breaches of the JV Agreement, including the failure to hold an annual meeting, the improper invoicing of Crescent Silver, the failure to adopt a Program and Budget for NJMJV and the custom milling of the Golden Chest Ore, Crescent Silver called a special meeting pursuant to section 7.3 of the JV Agreement and provided notice to NJMC in its capacity as Manager of NJMJV of its material breaches.

22.     At a special meeting, which was held on December 3, 2014, NJMC admitted to numerous breaches of the JV Agreement, including its failure to adopt a Program and Budget and hold an annual meeting.

23.     NJMC failed to remedy any of its breaches of the JV Agreement, including the material breaches of failing to hold an annual meeting and failing to adopt a Program and Budget within the applicable cure period under the JV Agreement of 60days.

24.     Due to NJMC's failure to remedy the breaches under the JV Agreement, on March 6, 2015, Crescent Silver provided notice to NJMC of NJMC's deemed resignation as Manager and appointed itself as Manager of NJMJV pursuant to paragraph 8.4 of the JV Agreement.

COMPLAINT - 6

## FIRST CAUSE OF ACTION

### Declaratory Judgment

25.     Crescent Silver incorporates by reference the allegations in the foregoing paragraphs.

26.     Pursuant to section 8.4 of the JV Agreement, the Manager of NJMJV is deemed to have resigned if it fails to perform a material obligation under the JV Agreement and such failure continues for a period of 60 days after notice from the other Participant demanding performance.

27.     Through a letter mailed on November 20, 2014, Crescent Silver provided written notice of NJMC's material breach of its duties as Manager in failing to hold an annual meeting and failing to obtain an approved Program and Budget.  NJMJC admitted to these breaches in the special meeting held on December 3, 2014.

28.     On February 5, 2014, the cure period for NJMC to remedy its breaches expired and it was deemed to have resigned as Manager.

29.     On March 6, 2015, Crescent Silver appointed itself as the successor Manager of NJMJV.

30.     Despite its deemed resignation as Manager and the valid appointment of Crescent Silver as Manager, NJMC has refused to relinquish the Manager's responsibilities to Crescent Silver.

31     Crescent Silver alleges that there is an actual and justiciable controversy between Crescent Silver and NJMC regarding their respective rights to act as the Manager of NJMJV pursuant to the JV Agreement.

32.     Crescent Silver alleges that based upon the foregoing, the Court should declare that Crescent Silver is the Manager of NJMJV pursuant to the terms of the JV Agreement effective as of March 6, 2015.

## SECOND CAUSE OF ACTION

### Breach of Contract

33.     Crescent Silver incorporates by reference the allegations in the foregoing paragraphs.

34.     Pursuant to the JV Agreement, the Manager may only conduct Operations, incur expenses and acquire Assets pursuant to an approved Program and Budget.  Pursuant to Section 7.3 of the Agreement, the Manger is to give notice of "regular meetings," which must be held "at least annually."  Pursuant to section 5.3 of the JV Agreement, "[t]he Participants shall contribute funds for adopted Programs and Budgets in proportion to their respective Participating Interests . . . ."  Pursuant to section 6.1.1 of the JV Agreement, the initial Participating Interests are 67% for NJMC and 33% for Crescent.

35.     NJMC breached the JV Agreement by invoicing Crescent Silver for expenses that were not incurred pursuant to an approved Program and Budget.  NJMC further breached the JV Agreement by invoicing Crescent Silver for amounts greater than the calculation set in section 6.1.1 of the JV Agreement.

36.     Pursuant to section 15.15 of the JV Agreement, "[n]o custom milling or processing shall be done for an unrelated third party without the approval of both parties."

37.     In accordance with this section 15.15, NJMC caused NJMJV to do custom milling for Juniper Resources, who is an unrelated third party.  While NJMC holds a 47.88% minority

interest in the entity that leases the Golden Chest mine to Juniper Resources and a net smelter royalty on the real property, this is insufficient to make it a related party within the meaning of the JV Agreement.

38.     Further, NJMC caused NJMJV to mill the Golden Chest Ore, which originates from real property not included in the Properties, which excludes the milling of the Golden Chest Ore as an allowed "Purpose" of NJMJV through Section 3.3 of the JV Agreement.

39.     By causing NJMJV to custom mill the Golden Chest Ore, NJMC breached the JV Agreement.  This breach proximately caused damages to Crescent Silver in an amount in excess of $75,000 and in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

### Accounting

40.     Crescent Silver incorporates by reference the allegations in the foregoing paragraphs.

41.     Pursuant to section 9.11 of the JV Agreement, upon request Crescent Silver is entitled to a full accounting and financial records of NJMJV.

42.     By letter dated November 20, 2014, Crescent Silver requested an audit and accounting.  As of the date of this action, this request has not been fulfilled by NJMC in its capacity as manager of NJMJV.

43.     Pursuant to its rights under the JV Agreement and under applicable law, Crescent Silver is entitled to an accounting pursuant to Idaho Law and Idaho Code § 53-3-101, *et seq.*

## FOURTH CAUSE OF ACTION

### Breach of Fiduciary Duty

44.     Crescent Silver incorporates by reference the allegations in the foregoing paragraphs.

45.     Crescent Silver alleges that pursuant to the joint venture which was entered between Crescent Silver and NJMC regarding the NJMJV, that NJMC at all times material owed a fiduciary duty to Crescent Silver pursuant to Idaho Law and pursuant to Idaho Code § 53-3-101, *et seq.*

46.     Crescent Silver alleges that based upon the conduct of NJMC as previously alleged in this Complaint, that NJMC breached its fiduciary duties to Crescent Silver.

47.     Crescent Silver alleges that as a direct and proximate cause of the conduct of NJMC which is the subject of this complaint, Crescent Silver has suffered damages in an amount in excess of $75,000 and in an amount to be proven at the time of trial.

## FIFTH CAUSE OF ACTION

### Injunctive Relief

48.     Crescent Silver incorporates by reference the allegations in the foregoing paragraphs.

49.     Crescent Silver alleges that based upon the conduct of NJMC as previously alleged in this complaint, that Crescent Silver is suffering immediate and irreparable injury, loss or damage by the conduct of NJMC.

50.     Crescent Silver alleges that it is entitled to an order from this Court enjoining NJMC from conducting any further acts as the Manager of NJMJV, from conducting any further

acts of using NJMJV to performing custom milling for Juniper Resources or any other unrelated third party; and from using NJMJV to mill the Golden Chest Ore, or any other properties which are not provided under the terms of the JV Agreement.

## SIXTH CAUSE OF ACTION

### Claim for Attorney's Fees

51.     Crescent Silver incorporates by reference the allegations in the foregoing paragraphs.

52.     Crescent Silver alleges that Crescent Silver has been required to retain the services of Witherspoon Kelley in order to prosecute the claims contained within this complaint and is incurring reasonable attorney's fees and costs in doing so.  Crescent Silver therefore alleges and makes a claim against NJMC for recovery of Crescent Silver's reasonable attorney's fees and costs incurred in prosecuting the claims contained within this complaint pursuant to Idaho Code §§ 12-120(3) and -121, Rule 54 of the Idaho Rules of Civil Procedure, and all other applicable laws allowing for the recovery of attorney's fees in this action.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS FOR A JUDGMENT AGAINST DEFENDANT AS FOLLOWS

(1)     For a declaratory judgment declaring the respective rights of Crescent Silver as the Manager of NJMJV effective as of March 6, 2015.

(2)     For an order from this Court enjoining NJMC from conducting any further acts as the Manager of NJMJV.

COMPLAINT - 11
K:\wdocs\cdamain\16080\0001\C0117636.DOC

(3)     For an order from this Court enjoining NJMC from conducting any further acts of using NJMJV to perform custom milling for Juniper Resources or any other unrelated third party.

(4)     For an order from this Court enjoining NJMC from using NJMJV to mill the Golden Chest Ore, or any other properties which are not provided under the terms of the JV Agreement.

(5)     For a decree in Judgment in favor of Crescent Silver as against NJMC in an amount in excess of $75,000 and in an amount to be proven at the time of trial.

(6)     For an order from this Court requiring NJMC to provide an accounting to Crescent Silver as required under Idaho Law and Idaho Code § 53-3-101, *et seq*.

(7)     For a decree in Judgment in favor of Crescent Silver for Crescent Silver's attorney's fees and costs pursuant to Idaho Code §§ 12-120(3) and -121, Rule 54 of the Idaho Rules of Civil Procedure, and all other applicable laws allowing for the recovery of attorney's fees in this action in an amount of $75,000 if judgment is taken by default or in the event of contest, as set by this Court, plus Crescent Silver's costs and disbursements herein.

(8)     Grant such other and further relief as the Court deems appropriate, just, and equitable under the circumstances.

DATED this 19th day of March, 2015.

WITHERSPOON KELLEY

/s/ Mark A. Ellingsen
Mark A. Ellingsen
*Attorneys for Plaintiff*

COMPLAINT - 12
K:\wdocs\cdamain\16080\0001\C0117636.DOC